J. Byron SAUNDERS et al., Appellants,

v.

SOUTHWEST GENERAL INSURANCE
COMPANY et al., Appellees.

No. 10508.

Court of Civil Appeals of Texas.

Austin.

July 10, 1957.

Rehearing Denied Aug. 7, 1957.

Will Wilson, Atty. Gen., C. K. Richards, Lawrence Jones, Asst. Attys. Gen., R. Dean Moorhead, Sp. Asst. Gen., Will C. Thompson, R. B. Cousins, III, Sp. Asst. Attys. Gen., for appellant.

Robert F. Ritchie, Dallas, F. L. Kuykendall, Austin, Eskridge, Groce & Hebdon, San Antonio, for appellee.

PER CURIAM.

Appellees are six fire insurance companies doing fire insurance business in Texas. They filed this suit against the Texas Board of Insurance Commissioners and its members seeking to cancel and set aside an order of the Board directing appellees to cease and desist issuing policies of fire insurance under a rating schedule filed by them. The rating schedules so filed are similar and we quote from one of them the portions that we regard as material here:

"1. The coverages to which this filing applies are Fire, Extended Coverage, Additional Extended Coverage Endorsement and Physical Loss Form.

"2. Apply the following Graduated Reduction Scale to the net term rate

prescribed for the coverage concerned by the 'Texas General Basis Schedules' and by the 'TexGBS–Ext. Covg., etc.' rates and rules with respect to all risks of the class or classes specified below located in the State of Texas:

"Amount of Insurance on Southwest General Insurance Company Policy (Each Item To Be Rated Separately)

| Amount of Insurance on Southwest General Insurance Company Policy (Each Item To Be Rated Separately) | Reduction In Net Rate |
|---|---|
| First $5,000 or part thereof | None |
| For the excess of $5,000 up to $10,000 | 40% |
| For the excess of $10,000 up to $15,000 | 50% |
| For the excess of $15,000 | 30%" |

The filed ratings applied to dwelling buildings and dwelling contents.

The State acting by its Attorney General upon the relation of six insurance companies intervened. Also the State was granted leave to file an information in the nature of quo warranto. These parties are appellants.

Appellants alleged that the rating schedules supra are void, and prayed for injunctive relief restraining appellees from issuing policies of fire insurance under said ratings.

Appellants filed pleas to the jurisdiction of the court and appellees filed pleas in abatement. These pleas were overruled and at a nonjury trial judgment was rendered for appellees vacating the cease and desist order issued by the Board and confirming appellees' right to issue policies of fire insurance under the rating schedules supra.

The question presented concerns the provisions of present Art. 5.26, Texas Insurance Code, V.A.T.S., which we quote:

"A maximum rate of premiums to be charged or collected by all companies transacting in this State the business of fire insurance, as herein defined, shall be exclusively fixed and determined and promulgated by the Board, and no such fire insurance company shall charge or collect any premium or other compensation for or on account of any policy or contract of fire insurance as herein defined in excess of the maximum rate as herein provided for, but may write insurance at a less rate than the maximum rate as herein provided for. When insurance is written for less than the maximum rate, such lesser rate shall be applicable to all risks of the same character situated in the same community."

Appellants assert that the filed rating schedules supra violate the above article especially that the same violate the provision that "such lesser rate shall be applicable to all risks of the same character situated in the same community." That is, that the rate shall be applied uniformly to the risk without condition to the amount of insurance, and that the authority to classify risks lies in the exclusive jurisdiction of the Board. Art. 5.25, Texas Insurance Code.

It appears that the Board had established maximum rates to be charged for fire insurance on dwellings which is referred to as the "General Basis Schedule (or GBS)" and had issued a directive to all parties issuing fire insurance policies which specified the information to be furnished and the methods to be followed in filing reduced rating schedules. The portion of this directive most pertinent here is:

"Filing must make it clear as to classes of risks to which filing applies, and must apply to all risks of same character in same community. We consider 'risks of the same character' as those of similar construction or having the same general type of furnishing and equipment used for the same general purpose and having approximately the same hazards of fire loss to similar use and occupancy."

Appellees have presented a motion "to dismiss this appeal" because the questions presented will become moot before a judgment herein can become final.

Art. 5.26, supra was amended by the 55th Legislature. Acts 1957, 55th Leg., c. 497. This amendment will become effective August 21, 1957. It consists of three sections

and subsections to section one. By section 1(a) prior Art. 5.26 is reenacted with the exception of the last sentence thereof and in lieu of that sentence there is added:

"* * * provided, however, upon the written application of the insured stating his reasons therefor, filed with and approved by the Board, a rate in excess of the maximum rate promulgated by the Board may be used on any specific risk."

Added section 1(b) is:

"Any insurer desiring to write insurance at a less rate than the maximum rate provided for in paragraph (a) above shall make a written application to the Board for permission to file a uniform percentage deviation for a lesser rate than the maximum rate, on a state-wide basis or by reasonable territories as approved by the Board, from the class rates or schedules or rating plans respecting fire insurance and its allied lines of insurance or class of risk within such kind of insurance or a combination thereof promulgated by the Board. Such application shall specify the basis of the deviation, and shall be accompanied by the data upon which the applicant relies; provided, however, such application, data and all other information filed in connection with such deviation shall be public records open to inspection at any reasonable time. The provisions of this paragraph shall not be construed to prohibit the application of a uniform scale of percentage deviations from the maximum rate provided the general standards fixed in paragraph (d) hereof are met."

Added section 1(c) in part is:

"Provided further, that any insurer desiring to write insurance at a lesser net rate than the maximum rate provided for in paragraph (a) above, * * shall make a written application to the Board for permission to file its said

rating plan or procedure, the application of which would produce such lesser net rate. Said application shall specify the basis of the modification and shall be accompanied by the data on which applicant relies. * * *"

This section then provides that every insurer that avails itself of the provisions of the paragraph shall follow only such rating plan or procedure "ordered as permitted by the Board for its use as to said special types or classes of risks * * *"

The relevant portions of added section 1(d) are:

"In considering any application provided for in (b) or (c) above, the Board shall give consideration to the factors applied by insurers or rating organizations generally used by such insurers or rating organizations in determining the bases for rates; * * *. The Board shall issue an order permitting the deviation for such insurer to be filed if it is found to be justified upon the applicant's showing that the resulting premiums would be adequate and not unfairly discriminatory. The Board shall issue an order denying such application if it finds that the resulting premiums would be inadequate or unfairly discriminatory. * * * Each deviation permitted to be filed shall be effective for a period of one (1) year from the date of final granting of such permission whether by the Board in the first instance or upon direction of the court. * * *"

It further provides that a deviation may be withdrawn with permission of the Board or terminated by its order, and that

"* * * From and after the effective date of this Act all deviations from maximum rates shall be governed by this Article."

Added section 1(e) provides that insurance in force prior to rate changes resulting from the Act shall be affected except when there is a change in the hazard of the risk.

Added section 1(f) is:

"Any deviations from maximum rates on file with the Board and in effect until the effective time of this Act shall remain in effect for a period of thirty (30) days after such effective time, and if during such thirty (30) day period a written application to the Board is made for permission to file such deviations under this Act, same shall remain in effect until the Board has entered its order either permitting or denying the application and during the full course of any hearings on and appeal from any such order."

Added section 1(g) provides for public hearings, notice, applications for hearings and appeals from orders of the Board.

Sec. 2 repeals all laws or parts of laws in conflict with the Act and section 3 declares an emergency.

Appellants say: •

"There can be no question that Senate Bill No. 123 of the 55th Legislature has made great and substantial changes in the procedures to be followed in filing and approval of deviations from the maximum rate for fire insurance determined by the State Board of Insurance."

In regard to the concluding sentence of Sec. 1, par. 13 of the new Act they say:

" * * * the language of the sentence is 'a uniform scale of percentage deviation' and not 'graduated lesser rate deviation'. The term 'uniform scale of percentage deviations' is first to be defined by the State Board of Insurance and perhaps alternatively by the courts. However, that term is not in this case and not before this Court.

"Secondly, this sentence does not approve but simply provides that the new law does not prohibit a 'uniform scale of percentage deviations from the maximum rate'. This language leaves the question as to who shall determine the classifications of the scale, and the balance of the act clearly indicates that the responsibility for determining 'class rates' or 'schedules' or 'rating plans' or 'classification of risk' is in the Board. This sentence does not approve or authorize anything, but simply assures the Board that it is not prohibited from considering 'a uniform scale of percentage deviation.' "

It is obvious that the new law contains material language differing from the requirements of the old law respecting the question presented here and that a decision under the present law would not be decisive under the new law.

Appellants suggest that additional premiums may be due the State if we should sustain their contentions under the present law. As to this we cannot anticipate more than to say that if the State has acquired any vested rights under the old law that they will be safeguarded in any suit brought for their protection.

Our judgment if rendered before our statutory recess on August 1, 1957, whatever it might be, could not possibly become final before August 21 if appeal to the Supreme Court is pursued.

In Speed v. Keys, 130 Tex. 276, 109 S.W.2d 967, it was held that where time would not permit the court to answer a certified question and certify the answer to the Court of Civil Appeals prior to the expiration date of a temporary restraining order that the cause was moot. See also Iles v. Walker, 132 Tex. 6, 120 S.W.2d 418, 422, where it is stated:

"Also, it is the settled law of this State that whenever the time comes that it is evident that the contest of a nomination cannot be completed in a tribunal of last resort, as provided by law in such cases, in time for the name to be posted as provided by law, the entire contest proceedings become moot and should be dismissed, and matters left in the same condition that would

have existed had no contest been instituted."

In 3–A Tex.Jur., p. 57, it is stated:

"A case or question before an appellate court may become moot by reason of the new legislation, or by reason of the expiration or the superseding of existing legislation."

It is our opinion that time will not permit a judgment rendered in this cause to become final prior to the effective date of the amendment supra and for which reason the judgment of the trial court is reversed and set aside and the cause is dismissed. Freeman v. Burrows, 141 Tex. 318, 171 S.W.2d 863.

Reversed, set aside and cause dismissed.